UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
MARIO HENDRIQUES ARJUNE,                :

        Plaintiff,                        15 Civ. 1551 (AJP)

        -against-                   OPINION & ORDER

CHRISTOPHER SHANAHAN, et al.,           :

        Defendants.                    :
------------------------------------- x

**ANDREW J. PECK, United States Magistrate Judge:**

       As baseball season begins, it is appropriate to start this Opinion with one of Yogi Berra's most famous expressions: "it is deja vu all over again." Petitioner Arjune seeks a writ of habeas corpus from his detention as a criminal alien, without a bail hearing, by U.S. Immigration and Customs Enforcement ("ICE"), which detention occurred more than four years after his release from custody from the criminal conviction. (See Dkt. No. 1: Pet.) I interpreted the phrase "when the alien is released" in INA § 236(c), 8 U.S.C. § 1226(c)(1), in Lora v. Shanahan, 15 F. Supp. 3d 478 (S.D.N.Y. 2014)(Peck, M.J.). Surprisingly, the U.S. Attorneys' Office did not even cite Lora in their brief opposing Arjune's habeas petition. (See generally Dkt. No. 9: Gov't Opp. Br.) Not surprisingly, I adhere to my statutory interpretation in Lora.[1] Accordingly, Arjune's petition is GRANTED, and the government is directed to provide Arjune with an individualized bond hearing within 30 days of this Opinion.

---

[1] The government's appeal in Lora is pending in the Second Circuit. Lora v. Shanahan, 15 F. Supp. 3d 478, appeal docketed, No. 14-2343 (2d Cir. June 26, 2014).

## FACTS

The facts are not in dispute and need only be briefly summarized. Petitioner Arjune is a native of Suriname who entered the United States as a lawful permanent resident in 2006. (Dkt. No. 1: Pet. ¶¶ 1, 24, 26; Dkt. No. 9: Gov't Opp. Br. at 2.) In 2009, he was convicted in Supreme Court, Queens County, of fourth degree criminal possession of a weapon and tampering with physical evidence, and sentenced to one year imprisonment. (Dkt. No. 8: Gov't Return ¶ 3 & Ex. B; Pet. ¶¶ 27-28.) Arjune was released from prison on March 4, 2010. (Pet. ¶ 29 & Ex. H; Gov't Opp. Br. at 2.) ICE did not detain Arjune until December 2014. (Pet. ¶ 39; Gov't Opp. Br. at 1; Gov't Return ¶ 5 & Ex. D.) Represented by Brooklyn Defender Services, Arjune filed this habeas petition on March 3, 2015. (Pet.) The parties have consented to my decision of the petition pursuant to 28 U.S.C. § 636(c). (Dkt. No. 6.)

## ANALYSIS

INA § 236(c) provides:

The Attorney General[2] shall take into custody any alien who–

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

---

[2] "Originally, the authority and duties imposed by § 1226(c) were those of the Attorney General; today, they belong to DHS," the Department of Homeland Security. Straker v. Jones, 986 F. Supp. 2d 345, 351 (S.D.N.Y. 2013).

> <u>when the alien is released</u>, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  As in <u>Lora</u> v. <u>Shanahan</u>, the issue is whether the word "when" in the phrase "when the alien is released" imposes a temporal limitation on DHS's power to mandatorily detain criminal aliens.  <u>See</u> <u>Lora</u> v. <u>Shanahan</u>, 15 F. Supp. 3d 478, 485 (S.D.N.Y. 2014) (Peck, M.J.).  I noted in <u>Lora</u> that:

> Neither the Supreme Court nor Second Circuit have opined on the precise questions presented here, and the circuit and district courts (both inside and outside the Second Circuit) that have addressed these issues are not in agreement.

<u>Lora</u> v. <u>Shanahan</u>, 15 Supp. 3d at 485 & n.16 (citing cases).  While the issue is pending, the Second Circuit has not yet decided the issue.  (<u>See</u> fn.1 above)

> <u>Lora</u> explained that the courts have used two different interpretations of "when":
>
> > The courts that have addressed the meaning of the word "when" as used in this clause generally have adopted one of the interpretations advanced by the parties: (1) "the 'time-limiting' construction," under which courts interpret it "to mean that DHS can subject an alien to mandatory detention only if it detains him at, or around, the time he is released from criminal custody for the removable offense"; and (2) "the 'duty-triggering' construction," under which courts interpret it "as creating a precondition for DHS to exercise its mandatory detention authority, but not as setting a deadline for its use."  <u>Straker</u> v. <u>Jones</u>, 13 Civ. 6915, 986 F. Supp. 2d 345, 352, 2013 WL 6476889 at *5-6 (S.D.N.Y. Dec. 10, 2013) (labeling competing constructions and collecting cases).

<u>Lora</u> v. <u>Shanahan</u>, 15 F. Supp. 3d at 486.

> In April 2014 when the <u>Lora</u> opinion was issued, the majority of district court decisions had adopted the "time-limiting" construction:
>
> > The majority of district courts to address the issue, however, have adopted the time-limiting construction, rejecting the BIA's interpretation and holding "that the statute unambiguously provides that ICE may only subject an alien to mandatory detention if it detains him <u>immediately at or around</u> the time he is released from

criminal custody for the underlying offense." Debel v. Dubois, 2014 WL 708556 at *4 (collecting cases); accord, e.g., Valdez v. Terry, 874 F. Supp. 2d 1262, 1274-75 (D.N.M. 2012) ("[M]ost federal district courts that have ruled on this issue have agreed that 'when the alien is released' unambiguously means immediately after release from custody and have rejected the BIA's interpretation of § 1226(c). The Court finds the reasoning of these decisions to be persuasive." (citations omitted & collecting cases)); Louisaire v. Muller, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("Rojas . . . is wrong as a matter of law and contrary to the plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) immediately upon their release from criminal sentences for those same offenses, even if they are still serving part of their sentence out in the community . . . . A majority of courts that have examined this issue have held that the mandatory statute is unambiguous on this point." (collecting cases)); Garcia v. Shanahan, 615 F. Supp. 2d 175, 180-82 & n.2 (S.D.N.Y. 2009) ("For over a decade, courts analyzing Section 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody on or about the time he is released from custody for the offense that renders him removable. . . . The Court finds that the plain language of the statute is unambiguous and manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense." (collecting cases)).

Lora v. Shanahan, 15 F. Supp. 3d at 487 & n.19 (citing additional cases).

In Lora, I concluded that the analyses in these decisions were correct and "agree[d] that 'the clear language of the statute indicates that the mandatory detention of aliens "when" they are released requires that they be detained at [or near] the time of release.'" Lora v. Shanahan, 15 F. Supp. 3d at 487 (citation omitted).  I further explained:

> As several courts have explained, "'[t]he term "when" includes the characteristic of "immediacy," referring in its primary conjunctive sense, to action or activity occurring "at the time that" or "as soon as" other action has ceased or begun.'"  It therefore would pervert the statute's plain meaning to interpret the command to mandatorily detain "'certain criminal aliens "when" those aliens are released from state custody to include those aliens who had "already" been released from state custody.'"
>
> "Thus, if Congress had intended for mandatory detention to apply to aliens at any time after they were released, it easily could have used the language 'after the alien is released,' 'regardless of when the alien is released,' or other words to that effect.  Instead, Congress chose the word 'when,' which connotes a much different meaning."

5

The government's interpretation of the "when . . . released" phrase would render it "surplusage."

The structure of § 1226(c) further "suggest[s] to this Court that Congress intended the 'when . . . released' language to mean immediately upon release." As the Castaneda court stated:

> First, the statute begins, not with provisions for mandatory detention, but rather with those for arrest and detention subject to an individualized bond hearing and potential release. . . . Section 1226(c), the exception for certain aliens, identifies those aliens in 1226(c)(1). Congress requires the Attorney General to take these specific criminal aliens into custody "when the alien is released."
>
> Congress's structuring of section 1226 in this way is no accident. Congress intended that aliens taken into custody typically receive a bond hearing; it then provided an exception in certain cases—certain criminal aliens who have been picked up by ICE immediately upon release from their custodial sentence should not be bonded out or paroled into our communities no matter the circumstances. The mandatory detention provision is, thus, a limited exception.

Castaneda v. Souza, 952 F. Supp. 2d at 314-15 (citation omitted).

This interpretation is consistent with the purposes underlying the enactment of the mandatory detention provision, i.e., facilitating removals and reducing recidivism. As prior decisions have explained:

> This Court can find no support for the idea that Congress intended to subject criminal aliens already released to mandatory detention. After all, Congress chose not to make the provisions retroactive and require mandatory detention of those criminal aliens who had completed their custodial sentence before the effective date of the provision. These criminal aliens, already in the community, could be detained by ICE, but would receive individualized detention hearings.
>
> . . . .
>
> [Petitioner] has already returned to her community. The congressional "purpose of preventing the return to the community of those released in connection with the enumerated offenses," does not apply to [petitioner] as she has lived in the community for three years. Given that mandatory detention would not satisfy the congressional purpose of this provision, . . . this Court is at a loss as to what other purpose mandatory detention could serve. This Court simply sees no reason why Congress

6

>would have intended for her to be picked up years after she has reintegrated back into her community and to be held without presentment before an immigration judge for a bond determination.

Castaneda v. Souza, 952 F. Supp. 2d at 317 (citations & fn. omitted).

>Finally, and perhaps most importantly, interpreting § 1226(c) to require immediate detention does not extinguish ICE's detention authority where there is a delay, it merely restores the alien's right to an individualized bond hearing:
>
>>[R]eading the "when . . . released" language to mean immediately upon release or within a reasonable period of time does not mean [petitioner] goes free. Instead, she is entitled merely to a bond hearing. Her likelihood of complying with a deportation order is a factor in whether she is to be granted bond and released by an immigration hearing officer. . . . [F]ailure to take an alien into custody at the moment of release or within a reasonable period of time does not result in a loss of power or authority. The Attorney General must grant the alien an individualized bond hearing, but can still deny bond and hold the alien. No power or authority has been lost.
>
>Castaneda v. Souza, 952 F. Supp. 2d at 317 n.8, 319.

Lora v. Shanahan, 15 F. Supp. 3d at 487-89 (citations & fns. omitted).

In the present case, the government asserts that several Circuit decisions and "numerous cases in this District" adhere to the "duty triggering" construction. (Dkt. No. 9: Gov't Opp. Br. at 8-9.) All but four of the cases cited by the government pre-dated Lora and were considered by me in reaching the Lora decision. The fact of the matter is that the district court decisions in this district (and the two recent Circuit decisions outside the Second Circuit) remain

split, with some decisions accepting the "duty triggering" construction,[3] while others -- in this Court's opinion the better-reasoned -- adopt the "time limiting" construction.[4]

The "majority" view, and in any event the better-reasoned decisions, support the "time limiting" construction, as I held in Lora. I adhere to that decision until the Second Circuit instructs otherwise.

Applying the "time limiting" construction of § 1226(c) to Arjune, the result is clear. Arjune was released from prison on March 4, 2010 but not taken into immigration custody until December 2014, over four and a half years later. (See page 2 above.) As in Lora, "'[w]hile the exact point at which ICE loses its authority to detain without affording an alien an individualized bail hearing under § 1226(c) may be unclear, the Court is confident that a [three- or] four-year gap between criminal release and assumption of immigration custody is an unreasonable delay for an alien such as'" Arjune. Lora v. Shanahan, 15 F. Supp. 3d at 490.

---

[3] See, e.g., Olmos v. Holder, -- F.3d -- , No. 14-1085, 2015 WL 1296598 (10th Cir. Mar. 24, 2015) (the gap between release and INS custody was only six days); Young v. Aviles, 14 Civ. 9531, 2015 WL 1402311 at *2-6 (S.D.N.Y. Mar. 26, 2015); Reynoso v. Aviles, 14 Civ. 9482, 2015 WL 500182 at *4 & nn.5-6 (S.D.N.Y. Feb. 5, 2015) (collecting decisions using "duty triggering" and "time limiting" interpretations).

[4] See, e.g., Castaneda v. Souza, 769 F.3d 32, 41-49 (1st Cir. 2014), opinion withdrawn & reh'g en banc granted (1st Cir. Jan. 23, 2015); Rodriguez v. Shanahan, 14 Civ. 9838, 2015 WL 405633 at *6-14 (S.D.N.Y. Jan. 30, 2015); Cruz v. Shanahan, 14 Civ. 9736, 2015 WL 409225 at *6 (S.D.N.Y. Jan. 30, 2015), appeal docketed, No. 15-971 (2d Cir. Mar. 30, 2015); Martinez-Done v. McConnell, 14 Civ. 3071, 2014 WL 5032438 at *6-8 (S.D.N.Y. Oct. 8, 2014), appeal docketed, No. 14-4517 (2d Cir. Dec. 8, 2014).

8

**CONCLUSION**

For the reasons set forth above, Arjune's habeas petition (Dkt. No. 1) is GRANTED. The government is directed to provide Arjune with an individualized bond hearing (or stipulate to a bond amount)[5/] within 30 days of this Opinion.[6/] The Court retains jurisdiction until that occurs. Counsel shall advise the Court of the results of the bond hearing.

SO ORDERED.

Dated:   New York, New York
         April 7, 2015

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:   All Counsel

---

[5/]   The Court notes that after my Opinion in Lora, the government and Lora stipulated to a bond of only $5,000. (See 14 Civ. 2140, Dkt. Nos. 15-16.)

[6/]   According to Arjune's counsel, his next immigration court hearing is May 6, 2015 (Dkt. No. 10: Arjune Reply Br. at 10 n.3), within 30 days of this Opinion.